JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
TAYLOR FERRELL
SHAUN M. PETTIGREW
Natural Resources Section
BRIENA STRIPPOLI
Wildlife and Marine Resources Section
150 M Street, NE
Washington, D.C. 20004
Phone: (202) 305-0874 (Ferrell)
        (206) 526-6881 (Pettigrew)
        (202) 305-0339 (Strippoli)
taylor.ferrell@usdoj.gov
shaun.pettigrew@usdoj.gov
briena.strippoli@usdoj.gov
*Counsel for Federal Defendants*

THE HONORABLE PATRICIA SULLIVAN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PENDLETON DIVISION

| | |
|---|---|
| CENTRAL OREGON LANDWATCH, an Oregon non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> SHANE JEFFRIES, in his official capacity as Ochoco National Forest Supervisor; and UNITED STATES FOREST SERVICE, <br><br> Federal Defendants, <br><br> and <br><br> OCHOCO TRAIL RIDERS, OREGON MOTORCYLE RIDERS ASSOCIATION, PACIFIC NORTHWEST 4 WHEEL DRIVE ASSOCIATION, DESCHUTES COUNTY 4 WHEELERS, and THE BLUERIBBON COALTION, <br><br> Defendant-Intervenors | Case No. 2:17-cv-1004-SU (Lead Case) <br> ***Case No. 2:17-cv-1091-SU (Trailing Case)*** <br> Case No. 2:17-cv-1366-SU (Trailing Case) <br><br><br><br> **FEDERAL DEFENDANTS' RESPONSE TO CENTRAL OREGON LANDWATCH'S AMENDED MOTION FOR AWARD OF COSTS OF LITIGATION, FEES, AND OTHER EXPENSES (ECF NO. 137)** |

TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………..1

II.     BACKGROUND .................................................................................................... 2

III.    RELEVANT FEE SHIFTING PROVISIONS.................................................... 4

IV.     LANDWATCH'S REQUEST FOR ATTORNEYS' FEES AND COSTS IS
        EXCESSIVE AND UNREASONABLE ........................................................... 6

        A.      LandWatch Seeks Compensation for Time and Expenses that Are Not
                Compensable under EAJA or the ESA. ................................................... 6

                1.      Fees incurred for work related to the administrative process are not
                        recoverable. ................................................................................... 6

                2.      Fees incurred in the FOIA process are not recoverable. ............................. 7

                3.      Fees for solicitation of a prospective client are not recoverable............... 10

                4.      Fees incurred related to responding to Intervenors are not
                        recoverable. ................................................................................... 10

                5.      Fees incurred for work on LandWatch's fee motion are not
                        recoverable. ................................................................................... 10

                6.      Fees incurred in performing administrative tasks are not recoverable. .... 12

        B.      LandWatch Seeks Compensation for Time and Expenses that Were
                Unreasonable.................................................................................... 13

        C.      LandWatch Seeks Compensation at Excessive Hourly Rates. ........................... 16

                1.      Many of the hours billed by LandWatch are subject to EAJA's
                        adjusted statutory maximum rate. ........................................................... 17

                2.      The hourly rates for attorneys Stiefel and Winter are excessive. ............. 21

        D.      LandWatch Seeks Compensation for Costs that Are Not Compensable. ............. 25

V.      CONCLUSION................................................................................................. 25

TABLE OF AUTHORITIES

Cases

*All. for the Wild Rockies v. Savage*,
  2019 WL 3293425 (D. Mont. July 22, 2019) ....................................................... 11, 18, 20, 21

*Ardestani v. INS*,
  502 U.S. 129 (1991).................................................................................................................... 5

*Bakewell v. Astrue*,
  No. 3:10-CV-01525-JE, 2013 WL 638892 (D. Or. Jan. 9, 2013)............................................ 12

*Cascadia Wildlands v. Bureau of Land Mgmt.*,
  987 F. Supp. 2d 1085 (D. Or. 2013) ................................................................................... 11, 18

*Comm'r, INS v. Jean*,
  496 U.S. 154 (1990)......................................................................................................... 5, 10, 11

*Council v. Weldon*,
  921 F. Supp. 2d 1069 (D. Mont. 2013) ................................................................................... 21

*Davis v. Mason Cty.*,
  927 F.2d 1473 (9th Cir. 1991) .................................................................................................. 22

*Forestkeeper v. U.S. Forest Serv.*,
  No. CV F 09-392 LJO JLT, 2011 WL 2946176 (E.D. Cal. July 21, 2011)............ 14, 19, 20, 22

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1992) ............................................................................................ 13, 23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).................................................................................... 1, 2, 5, 6, 10, 13

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*,
  2008 WL 4866063 (D. Or. Nov. 5, 2008)......................................................................... 11, 13

*League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. Turner*,
  305 F. Supp. 3d 1156 (D. Or. 2018) ...................................... 5, 11, 13, 16, 17, 18, 23

*League of Wildnerness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*,
  No. 3:10-cv-01397-SI, 2014 WL 3546858 (D. Or. July 15, 2014) ......................................... 11

*Love v. Reilly*,
  924 F.2d 1492 (9th Cir. 1997) ........................................................................... 5, 10, 18, 19

*Lucas v. White*,
  63 F. Supp. 2d 1046 (N.D. Cal. 1999) ..................................................................................... 21

*Marquez v. Harper Sch. Dist. No. 66,*
  No. 2:09-cv-01254-SU 2012 WL 2469545 (D. Or. June 26, 2012) ......................................... 22

*Mary Bakewell v. Michael J Astrue, Commissioner, Social Security Administration,*
  2013 WL 638889 (D. Or. Feb. 20, 2013) ................................................................................ 13

*McCown v. City of Fontana,*
  565 F.3d 1097 (9th Cir. 2009) .................................................................................................. 13

*McKenzie Flyfishers v. McIntosh,*
  158 F. Supp. 3d 1085 (D. Or. 2016) ........................................................................... 5, 16, 18

*Missouri v. Jenkins,*
  491 U.S. 274 (1989).................................................................................................................. 12

*Nadarajah v. Holder,*
  569 F.3d 906 (9th Cir. 2009) ...................................................................................................... 7

*Nat. Res. Def. Council, Inc. v. Winter,*
  543 F.3d 1152 (9th Cir. 2008) .................................................................................................. 17

*Native Fish Soc'y v. Nat'l Marine Fisheries Serv.,*
  No. 3:12-cv-00431-HA, 2014 WL 7331039 (D. Or. Dec. 19, 2014) ...................................... 11

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.,*
  223 F. Supp. 3d 1147 (D. Or. 2016) ........................................................................................ 11

*Or. Nat. Desert Ass'n v. Lohn,*
  522 F. Supp. 2d 1295 (D. Or. 2007) ........................................................................................ 14

*Pollinator Stewardship Council v. EPA,*
  No. 13-72346, 2017 WL 3096105 (9th Cir. June 27, 2017)........................................................ 8

*Prison Legal News v. Umatilla County,*
  No. 2:12-cv-01101-SU, 2013 WL 2156471 (D. Or. May 16, 2013) .......................... 16, 23, 24

*Scarborough v. Principi,*
  541 U.S. 401 (2004)..................................................................................................................... 5

*Schwarz v. Sec'y of Health & Human Servs.,*
  73 F.3d 895 (9th Cir. 1995) ...................................................................................................... 23

*Thompson v. Gomez,*
  45 F.3d 1365 (9th Cir. 1995) .................................................................................................... 11

*United States v. U.S. Currency,*
  957 F.2d 1513 (9th Cir. 1991) .................................................................................................... 6

*W. Watersheds Proj. v. U.S. Dep't of the Interior,*
   677 F.3d 922 (9th Cir. 2012) ............................................................... 7, 25

Statutes

5 U.S.C. § 552(a)(4)(e) ................................................................................. 8

16 U.S.C. § 1540(g)(1)(A) ............................................................................ 5

16 U.S.C. § 1540(g)(4) ......................................................................... 6, 7, 16

28 U.S.C. § 2412(b) ..................................................................................... 6

28 U.S.C. § 2412(d)(1)(A) ............................................................................ 4

28 U.S.C. § 2412(d)(2)(A) ............................................................................ 5

Regulations

36 C.F.R. pt. 218 ......................................................................................... 2

## I.    INTRODUCTION

Plaintiffs in these three consolidated cases prevailed on at least some of their claims and obtained the relief that they sought.  As a result, Federal Defendants acknowledge that they are entitled to reasonable attorneys' fees and costs under the Equal Access to Justice Act (EAJA) and the Endangered Species Act (ESA).  In fact, Federal Defendants settled attorneys' fees and costs with the plaintiffs in the lead case, Case No. 2:17-cv-1004-SU, for $145,000, and with the plaintiff in the other consolidated case, Case No. 2:17-cv-1366-SU for $138,000.  But Federal Defendants were unable to resolve attorneys' fees and costs with Central Oregon LandWatch (LandWatch), Case No. 2:17-cv-1091-SU, because LandWatch unreasonably seeks $316,393.93.  LandWatch has inflated its billed hours in this case by using *ten* different attorneys to bill over one thousand hours of work, all at rates far exceeding the statutory maximum and the average from the Oregon State Bar Economic Survey (OSB Survey).  LandWatch's request for attorneys' fees and costs is unreasonable and not fully recoverable under EAJA and the ESA.

LandWatch's unreasonable request has unnecessarily prolonged this already protracted case and brought about the precise result the Supreme Court cautioned litigants to avoid by turning its request for attorneys' fees into "a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  A detailed assessment of LandWatch's time sheets shows that LandWatch unreasonably requests compensation for many hours of non-compensable work.  The Court should make top-line deductions for all of the work that falls into these non-compensable categories.  Further, LandWatch failed to exercise good billing judgment in this case, resulting in an exorbitant number of hours claimed by LandWatch.  The Court should use its discretion to apply an additional percentage deduction to adjust these claimed hours down to reasonable amounts.  Finally, LandWatch seeks excessive hourly rates for all work on this case, and the Court should adjust those rates to bring them in line with those in the relevant market for this

*Fed. Defs.' Resp. to Pl.'s Mot. for Fees*                                                                    1

case—Pendleton, Oregon—and in line with the experience of LandWatch's attorneys and their

role in this case.  Neither EAJA nor the ESA is meant to present a party with a windfall.

Awarding LandWatch the excessive amount sought would sanction just such a result.

## II.        BACKGROUND

The Forest Service engaged in an extensive multi-year process to develop the Ochoco

Summit Trail System Project (Project).  *See* ECF No 69-1 at 4-5.  That process included

publication of a supplemental final environmental impact statement (EIS) and draft record of

decision (ROD) in September 2016.  *Id.* at 5.  Pursuant to Forest Service regulations, an

objection period followed issuance of the draft ROD.  *Id.*; *see* 36 C.F.R. pt. 218, supbt. B

(detailing pre-decisional administrative review process).  LandWatch, through their attorneys

Oliver Stiefel and Emma Bruden of Crag Law Center, participated in that pre-decisional

administrative review process by submitting objections to the draft ROD on November 7, 2016.

*See* AR_26760-831.[1]  Following the objection period, the Forest Service issued the final ROD

adopting the Project on June 27, 2017.  Fed. Defs.' Br. 5.

Three lawsuits challenged the Project.  First, on June 28, 2017, a group of plaintiffs led

by WildEarth Guardians (WildEarth) asserted claims under the National Forest Management Act

(NFMA), the National Environmental Policy Act (NEPA), the ESA, and the Forest Service's

Travel Management Rule (TMR).  ECF No. 1, Case No. 2:17-cv-1004.  Second, on July 13,

2017, LandWatch asserted claims under NFMA, NEPA, and the ESA.  ECF No. 1, Case No.

2:17-cv-1091.  Third, on August 31, 2017, Oregon Hunters Association (Hunters) asserted

claims under NFMA and NEPA.  ECF No. 1, Case No. 2:17-cv-1366.  These cases were later

---

[1] The Administrative Record lodged with the Court on November 2, 2017, includes this
document.  *See* ECF Nos. 30, 31.

*Fed. Defs.' Resp. to Pl.'s Mot. for Fees*                                                        2

consolidated, with the *WildEarth* case designated as the lead case.  ECF No. 19.  Following

consolidation, groups supporting off-highway vehicle use intervened as defendants, ECF No. 35.

On February 2, 2018, LandWatch moved to supplement the administrative record with

extra-record evidence.  ECF No. 52.[2]  That same day, the plaintiffs in the three consolidated

cases filed separate motions for summary judgment.  *See* ECF Nos. 48 (Hunters), 57

(LandWatch), 58 (WildEarth).  Federal Defendants and Intervenors separately cross moved for

summary judgment approximately one month later.  *See* ECF Nos. 69 (Federal Defendants), 70

(Intervenors).  At a hearing on May 22, 2018, the Court verbally denied LandWatch's motion to

supplement the administrative record.  ECF No. 86.  And on August 27, 2018, the Court issued

Findings and Recommendations (F&R).  ECF No. 89.

The F&R first explained the reason for denying LandWatch's motion to supplement the

administrative record, concluding that "LandWatch's proposed submissions are not proper

supplements to the Administrative Record" under the APA or the ESA.  *Id.* at 10.  The F&R then

went on to recommend that the parties' cross motions for summary judgment be granted in part

and denied in part and that the final ROD for the Project be vacated.  *See id.* at 50.  In so

recommending, the F&R largely found in favor of the plaintiffs in all three cases on their

overlapping NEPA and NFMA claims related to elk.  *Id.* at 16-31.  The F&R also found in

WildEarth and LandWatch's favor on their identical ESA claims and in WildEarth's favor on its

TMR claim.  *Id.* at 13-16, 44-49.  But the F&R rejected LandWatch's NEPA and NFMA claims

related to riparian areas, none of which overlapped with WildEarth or Hunters' claims.  *Id.* at 36-

44.  Following objections by Federal Defendants and LandWatch, the district court largely

---

[2] No other party moved to supplement the record, but non-party amicus filed a motion to submit extra-record evidence.  *See* ECF No. 55.

adopted the F&R, clarifying the remedy under the ESA, further explaining the F&R's findings

regarding elk security habitat, and determining that the Forest Service violated NFMA by

improperly modifying riparian management objectives under the Inland Native Fish Strategy.

Order 3-9, ECF No. 104.

       After the Court entered judgment, ECF No. 105, Federal Defendants and LandWatch

filed notices of appeal.  ECF Nos. 108, 110.  Federal Defendants ultimately decided not to pursue

an appeal, and the parties voluntarily dismissed their appeals.  *See* ECF Nos. 113, 114.  No

briefing or other substantive activity took place during this time.  *See* Pettigrew Decl. ¶ 2.

       Following dismissal of the appeals, the parties in all three of the consolidated cases

agreed that the plaintiffs would each file separate placeholder motions for attorneys' fees and

costs and immediately move to stay those motions to provide the parties an opportunity to

attempt to resolve them informally.  *See* ECF Nos. 115 (Hunters' motion), 118 (LandWatch's

motion), 122 (joint motion to stay), 123 (WildEarth's motion).  This approach was successful

with WildEarth and Hunters.  As reflected in the stipulated settlement agreements filed with the

Court, the parties settled attorneys' fees and costs with WildEarth for $145,000 and with Hunters

for $138,000.  *See* ECF Nos. 150, 151.  LandWatch and Federal Defendants, however, were not

able to reach an agreement to settle attorneys' fees and costs.  Instead, LandWatch filed an

amended motion seeking $316,393.93 in attorneys' fees and costs.  ECF No. 137.  That amount

is excessive and unreasonable for a variety of reasons discussed below.

## III.      RELEVANT FEE SHIFTING PROVISIONS

       A party prevailing in a civil action against the United States may be eligible for an award

of attorneys' fees and costs under EAJA.  *See* 28 U.S.C. § 2412(d)(1)(A).  "To be entitled to an

award, a party must (1) prevail, (2) be eligible for an award, (3) submit a statement of amounts

sought as well as an itemized account of time expended and rates charged, and (4) allege that the

United States' position was not substantially justified." *League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. Turner*, 305 F. Supp. 3d 1156, 1164 (D. Or. 2018) (citing *Scarborough v. Principi*, 541 U.S. 401, 408 (2004)). If a party satisfies the eligibility threshold under EAJA, a statutory maximum rate of $125/hour applies that can be adjusted for cost of living increases or if warranted by a special factor. 28 U.S.C. § 2412(d)(2)(A). In the Ninth Circuit, a court may award above the statutory maximum "if (1) the attorney possesses 'distinctive knowledge and skills developed through a practice specialty,' and those skills are (2) needed in the litigation and (3) not available elsewhere at the statutory rate." *Turner*, 305 F. Supp. 3d 1156, 1165 (D. Or. 2018) (quoting *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1997)).

The ESA provides that "any person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . , who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). The ESA further provides that, in issuing any final order in any suit brought pursuant to the ESA's citizen-suit provision, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." *Id.* § 1540(g)(4).

As a partial waiver of sovereign immunity, fee-shifting provisions "must be strictly construed in favor of the United States." *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1089 (D. Or. 2016) (quoting *Ardestani v. INS*, 502 U.S. 129, 137 (1991)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. If a party is eligible for fees, a court has discretion to determine what fees are reasonable. *Comm'r, INS v. Jean*, 496 U.S. 154, 160-61 (1990); *see also McKenzie Flyfishers*, 158 F. Supp. 3d at 1089.

**IV.     LANDWATCH'S REQUEST FOR ATTORNEYS' FEES AND COSTS IS EXCESSIVE AND UNREASONABLE**

Federal Defendants do not dispute that LandWatch satisfies the eligibility threshold for fees and costs under EAJA and the ESA. But those statutes authorize "reasonable" attorneys' fees and costs only, meaning that both the time expended and the hourly rate must be reasonable. *See* 28 U.S.C. § 2412(b); 16 U.S.C. § 1540(g)(4); *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991); *see also Hensley*, 461 U.S. at 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The burden of showing the reasonableness of the number of hours and the hourly rate is on the party seeking fees. *Hensley*, 461 U.S. at 437. For the reasons discussed below, LandWatch does not meet its burden to show that either the hours or rates are reasonable.

**A.     LandWatch Seeks Compensation for Time and Expenses that Are Not Compensable under EAJA or the ESA.**

As detailed below, LandWatch seeks payment for six categories of work that are not compensable. All of the 330.9 hours spent on this work should be deducted from the total amount of compensation sought by LandWatch. The total number of remaining compensable hours are set forth in the table at paragraph seventeen of the Pettigrew declaration and are the basis for the lodestar calculation set forth in section V below.

**1.     Fees incurred for work related to the administrative process are not recoverable.**

LandWatch seeks $21,804.50 in attorneys' fees for 99.4 hours that are exclusively related to LandWatch's participation in pre-litigation administrative process. *See* Pettigrew Decl. ¶ 5. To be clear, this is not time spent reviewing the administrative record to become familiar with the case or to aid in the drafting of the complaint in preparation for litigation. As discussed in

section IV.B. below, LandWatch seeks an additional $34,174 in compensation for that type of

work. Rather, these 99.3 hours consist of time spent by Mr. Stiefel and Ms. Bruden leading up to

the filing of the objection to the supplemental final EIS and draft ROD on November 7, 2016,

and later participating in the objection resolution process. None of this time is compensable. *See*

*W. Watersheds Proj. v. U.S. Dep't of the Interior*, 677 F.3d 922, 923, 925-29 (9th Cir. 2012)

(holding the only time attorneys' fees and costs can be awarded under EAJA for participation in

the administrative process is "when the proceedings have been ordered in a district court action

that remains pending until the conclusion of the administrative proceedings."); *Nadarajah v.*

*Holder*, 569 F.3d 906, 919 (9th Cir. 2009) ("[P]re-litigation administrative proceedings do not

have the requisite ancillary relationship with the judicial action to permit an award of fees under

[EAJA]."); *see also* 16 U.S.C. § 1540(g)(4) (limiting recovery to "*costs of litigation*" (emphasis

added)). Because the administrative proceedings at issue here were not conducted subsequent to

a remand, LandWatch's fees incurred during its participation in those proceedings are not

recoverable. Any attempt by LandWatch to argue that this pre-objection time was necessary to

the litigation would swallow the rule that time spent on pre-litigation administrative proceedings

is not compensable. The Court should reject any such argument and should deduct all

$21,804.50 for the 99.4 hours spent on administrative proceedings.

### 2. Fees incurred in the FOIA process are not recoverable.

LandWatch submitted Freedom of Information Act (FOIA) requests related to the Project

in July and September 2016, seeking various maps and GIS data. *See* AR_24614-15;

AR_25140-41. Ms. Bruden submitted a letter dated June 5, 2017, appealing the Forest Service's

response to those requests. AR_28691-709. In addition, on May 2, 2017, Mr. Stiefel had

submitted a separate FOIA request on behalf of LandWatch for "data and information related to

the cumulative effects analysis for hydrology and aquatic species for the [Project]."

AR_Supp_23241.[3]  LandWatch now seeks $12,240 for 50.4 hours of work by Ms. Bruden and

Mr. Stiefel related to its FOIA requests.  *See* Pettigrew Decl. ¶ 6.  This is inappropriate, and the

Court should deduct all of these fees from LandWatch's recovery.

Attorneys' fees for FOIA requests are governed by 5 U.S.C. § 552(a)(4)(e), not EAJA or

the ESA.  FOIA authorizes courts to "assess against the United States reasonable attorney fees

and other litigation costs reasonably incurred in any case under this section in which the

complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  By seeking compensation for

time spent related to a FOIA request under other fee-shifting statutes, LandWatch seeks an end

run around Congress's express provision for fees under FOIA.  If LandWatch thought it was

entitled to fees for its FOIA requests, it should have sought fees under FOIA's fee-shifting

provision, not EAJA or the ESA.  Awarding fees under a different fee-shifting statute for

LandWatch's FOIA requests would subvert Congress's express provision for the recovery of fees

and costs under those statutes.

Moreover, even if FOIA-related work were compensable under EAJA or the ESA in

certain circumstances, such circumstances are not present here because LandWatch nowhere

suggests that any information it obtained from its FOIA requests was "directly and intimately

related to the successful representation of their clients."  *See Pollinator Stewardship Council v.

EPA*, No. 13-72346, 2017 WL 3096105, at *11 (9th Cir. June 27, 2017).  LandWatch's inability

to connect any documents obtained through FOIA to its successful representation in this matter is

not surprising, as LandWatch was unsuccessful on its claims that are most directly related to its

FOIA requests.  First, LandWatch requested and received maps and GIS data that it then sought

---

[3] This citation is to the documents provided as part of Federal Defendants' Supplemental
Administrative Record.  *See* ECF No. 41.

to add to the administrative record, but the Court denied its motion to supplement the record with the maps it created.  Second, LandWatch requested and received data and information related to the cumulative effects analysis for hydrology and aquatic species and cited this data in its cumulative impacts arguments.  But the Court also denied its claim under NEPA regarding cumulative effects for hydrology and aquatic species.  *See* F&R at 7-10, 37-39.

Notwithstanding the disconnect between the FOIA requests and the issues on which LandWatch prevailed, LandWatch's declarants suggest that it is entitled to fees for FOIA-related work because the record was completed with "hundreds of additional documents that LandWatch's attorneys obtained through FOIA," Parent Decl. ¶ 13, and because a FOIA request "allowed LandWatch to later secure two stipulations from the Forest Service in which the agency agreed to add additional documents to the administrative record." Lacy Decl. ¶ 68.  These statements do not justify LandWatch's request for fees under either EAJA or the ESA for FOIA work.  As the index to the supplemental administrative record shows, nearly all of the documents that were added to the record were references cited in the supplemental final EIS, not documents obtained by LandWatch through FOIA.  *See* ECF No. 41.[4]  While it is true that Federal Defendants, to avoid burdening the Court with unnecessary motions practice over the administrative record, agreed to include LandWatch's May 2017 FOIA request and the documents produced in response, this agreement does not translate into recoverable FOIA time.  *See* AR_Supp_23247-24759.  As noted above, LandWatch identifies no documents that it received from that request that were directly and intimately related to its successful claims in this case.  As such, LandWatch cannot establish EAJA recoverability of FOIA time.  The Court should deduct all 50.4 FOIA hours, or $12,240, from LandWatch's fees recovery.

---

[4] The discs lodged with the Court included the index with hyperlinks to the documents.

### 3. Fees for solicitation of a prospective client are not recoverable.

LandWatch also seeks $1,678.50 for 4.9 hours for time soliciting additional clients, who were ultimately represented by other parties to this litigation. *See* Pettigrew Decl. ¶ 7. These hours are not compensable. *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.").

### 4. Fees incurred related to responding to Intervenors are not recoverable.

LandWatch's timesheets also identify $2,484.50 for 8.9 hours for time spent directly related to Intervenors' participation in this case. *See* Pettigrew Decl. ¶ 8. These hours are not compensable. *See Love*, 924 F.2d at 1495-96 (holding plaintiff not entitled to EAJA fees for opposing motion by intervenor). The Court should deduct $2,484.50 from the top line of LandWatch's recovery.

### 5. Fees incurred for work on LandWatch's fee motion are not recoverable.

LandWatch seeks $60,926.70 in compensation for 139.8 hours of work related to its motion for fees. *See* Pettigrew Decl. ¶ 9. None of this is compensable. "Exorbitant, unfounded, or procedurally defective fee applications—like any other improper position that may unreasonably protract proceedings—are matters that the district court can recognize and discount." *Jean*, 496 U.S. at 163. As reflected in Federal Defendants' settlements with LandWatch's co-plaintiffs in these consolidated cases, litigation over LandWatch's fee motion would have been unnecessary had it sought reasonable attorneys' fees at reasonable rates. But LandWatch's insistence on seeking a fees windfall has resulted in further excessive billing related to their fees petition and has unnecessarily prolonged this litigation. LandWatch should not be rewarded for taking this unreasonable position. Instead, all of the fees-related work

should be excluded as "[e]xorbitant" and "unfounded" because LandWatch's position on fees "unreasonably protract[ed] proceedings." *Jean*, 496 U.S. at 163.[5]

Moreover, of the $60,926.70 that LandWatch seeks for fees on fees, $15,829.50 is for 31.5 hours preparing "expert fee declarations" by three attorneys who had no role in this case (not to mention the time Mr. Stiefel and Mr. Becker spent editing those declarations). Pettigrew Decl. ¶ 9. The fees sought in the preparation of these declaration are separately excludable because the "declaration[s] are neither necessary nor helpful." *Cascadia Wildlands v. Bureau of Land Mgmt.*, 987 F. Supp. 2d 1085, 1096 (D. Or. 2013) (declining to award fees to expert attorney declarants where declarations did not meet the standards of necessity or helpfulness); *All. for the Wild Rockies v. Savage*, 2019 WL 3293425, at *8 (D. Mont. July 22, 2019) (same).

LandWatch's fees-validating declarations are unhelpful for several reasons. First, the declarants have no direct experience with this case. Second, they are part of a cottage industry of "fee experts" in Oregon, who routinely reciprocate each other's requests to validate fees and hours as being "reasonable." *See, e.g.*, *Turner*, 305 F. Supp. 3d at 1168 (Mr. Bloemers and Mr. Becker serving as declarants in support of Mr. Buchele's fees); *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 223 F. Supp. 3d 1147, 1155 (D. Or. 2016) (Mr. Buchele and Ms. Parent as declarants in support of Mr. Lacy's and Mr. Becker's fees); *Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, No. 3:12-cv-00431-HA, 2014 WL 7331039 (D. Or. Dec. 19, 2014) (docket number 312 showing Mr. Buchele as declarant in support of Mr. Becker's fees); *League of*

---

[5] To the extent that the Court awards compensation for any fees on fees work, that compensation should be limited proportionally to LandWatch's success in its fees application. *See Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 2008 WL 4866063, at *3 (D. Or. Nov. 5, 2008) ("[T]he Ninth Circuit has approved a reduction in attorneys' fees for 'fees-on-fees' by the ratio of the fees actually awarded in the underlying fee dispute to the amount requested." (citing *Thompson v. Gomez*, 45 F.3d 1365, 1366-68 (9th Cir. 1995)). Moreover, as discussed below, LandWatch should not receive enhanced rates for any fees-on-fees work.

*Wildnerness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-cv-01397-SI, 2014 WL 3546858, at *13 (D. Or. July 15, 2014) (Mr. Winter and Mr. Becker as declarants in support of Mr. Buchele's fees). Given the personal interest that these declarants have, not only in securing a rising tide of fees awards, but also in securing a future reciprocal declaration from the fees-seeking attorneys here, their credibility is questionable. Third, the fees declarants do not seriously engage with, much less explain, the disparity between LandWatch's fees request and the requests of its co-parties. The best measure of reasonableness in this case is the amount of fees and costs sought by other parties, and LandWatch's more than doubling of its co-Plaintiffs' request justifies a presumption of unreasonableness. The fees declarants' generic statements do not grapple with this disparity and do not rebut this presumption. As such, they are neither necessary nor helpful. The Court should give no weight to the declarations when assessing the reasonableness of LandWatch's fees.

The Court should deduct from LandWatch's recovery the 108.3 hours and $45,097.20 it claims it spent on the fee motion, as well as the 31.5 hours and $15,829.50 billed to prepare the fee declarations, for a total of 139.8 hours and $60,926.70.

### 6. Fees incurred in performing administrative tasks are not recoverable.

LandWatch seeks $3,581.50 for 27.5 hours of time that is properly defined as administrative or clerical work. *See* Pettigrew Decl. ¶ 10. Most of these tasks include downloading documents, formatting documents, preparing tables, and "setting up" calls. None of these tasks require paralegal training or skill, and they are not reimbursable, even at paralegal rates. *See Bakewell v. Astrue*, No. 3:10-CV-01525-JE, 2013 WL 638892, at *3 (D. Or. Jan. 9, 2013) ("Costs associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable." (citing *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989) ("purely clerical or secretarial tasks should not be billed

at a paralegal [or lawyer] rate, regardless of who performs them."))), *report and recommendation adopted*, No. 3:10-CV-01525-JE, 2013 WL 638889 (D. Or. Feb. 20, 2013).  All of these clerical tasks are overhead expenses that are part of LandWatch's hourly rates.  The Court should disallow the 27.5 hours and $3,581.50 of reimbursement for clerical time.

    **B.**    **LandWatch Seeks Compensation for Time and Expenses that Were Unreasonable.**

    In addition to the specific time detailed above, for which the Court should apply top-line deductions, this Court should make a further percentage deduction based on the overall unreasonableness of LandWatch's fees request.  A review of LandWatch's timesheets shows that much of the time for which LandWatch seeks compensation is not compensable because it was "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434; *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009); *see also Turner*, 305 F. Supp. 3d at 1170.  As discussed below, a further deduction of ten percent is warranted from LandWatch's overall request for fees for several reasons.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992) ("percentages indeed are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards.").

    First, LandWatch seeks compensation for excessive time spent preparing its Complaint.  As discussed above, LandWatch—after it had already billed nearly one hundred hours of attorney time during the administrative proceedings for the Project—billed an additional 126.8 hours, or $34,174, in preparing its Complaint.  Given that counsel claim to have specialized expertise that demands enhanced rates, it is not possible for LandWatch to justify the lack of efficiency in billing this much time on the preparation of a complaint.  *See Inst. for Wildlife Prot.*, 2008 WL 4866063, at *1 (finding 89.5 hours on pre-litigation legal research and drafting "inconsistent with the assertion of Plaintiff's counsel that his expertise in environmental law

warrants an enhanced hourly rate." (citations omitted)); *see also Or. Nat. Desert Ass'n v. Lohn*, 522 F. Supp. 2d 1295, 1301 (D. Or. 2007) (reducing an EAJA award by three percent where number of hours drafting and editing the complaint was "somewhat excessive.").

Second, LandWatch seeks reimbursement of $53,600 in fees for 96.8 hours of time that was unnecessary on this case because it was billed by additional attorneys who had no defined role in the case and did not contribute to LandWatch's success. Specifically, LandWatch seeks compensation at enhanced rates for 79.5 hours for Mr. Becker, 3.9 hours for Mr. Bloemers, 2.6 hours for Ms. Johnson and 10.4 hours for Ms. Fahey. *See* ECF Nos. 138-4, 139-1. The limited and non-substantive work performed by these counsel make clear that their participation was not necessary to this litigation.

Mr. Becker joined the case after all of the substantive work was completed. A review of his timesheet reveals that nearly all of his time was spent on fees-related issues or trivial and unnecessary actions that contributed nothing to LandWatch's success in this matter. A steep discount on the $37,707.50 sought by Mr. Becker is warranted. Similarly, Mr. Bloemers' timesheet shows that he had minimal involvement in this case, nearly all of which was procedural in nature or involved considering whether to represent Hunters as a client. *See* ECF No. 138-4 at 1. Ms. Johnson's work on this case was limited exclusively to LandWatch's unsuccessful motion to supplement the record and related motion to strike. *Id.* at 4. And Ms. Fahey seeks compensation for reviewing and commenting on briefs and participating in a moot. *Id.* at 5. But nowhere do these billing entries suggest that such review and participation was necessary to this litigation. Such excessive billing warrants a further percentage reduction in LandWatch's overall claim for fees. *See Forestkeeper v. U.S. Forest Serv.*, No. CV F 09-392 LJO JLT, 2011 WL 2946176, at *6 (E.D. Cal. July 21, 2011) (reducing the number of

recoverable hours in a case where plaintiffs sought reimbursement for the work of seven different attorneys and finding that "the amount of attorneys working on this action appears to have created double-billing, unnecessary conferences, and other excessive charges.").

Third, LandWatch seeks reimbursement of $9,941.50 for 30.5 hours of time billed litigating its unsuccessful motion to supplement the administrative record. *See* Pettigrew Decl. ¶ 12. As the Court made clear, the materials LandWatch sought to include were "not proper supplements to the Administrative Record" under the APA or the ESA. F&R 10. Time spent on this motion should be discounted from LandWatch's overall recovery.

Fourth, LandWatch seeks compensation of $9,120.50 for 37.3 hours of time for editing declarations from its standing declarants. Pettigrew Decl. ¶ 13. This is an excessive amount of time spent editing what is ostensibly someone else's declaration that should be discounted.

Fifth, LandWatch seeks compensation of $15,847 for 49.6 hours of time specifically identified in their timesheets as related to their largely unsuccessful riparian claims. Time spent on these unnecessary claims should be discounted because LandWatch prevailed on only a very narrow portion of one of those claims, and the claims were unnecessary to the relief obtained in this case. Indeed, neither of LandWatch's co-parties brought riparian claims and they obtained the same result. LandWatch's decision to spend dozens of hours on unnecessary and unsuccessful claims unnecessarily prolonged this matter and should not be rewarded.

Sixth, as discussed above, Plaintiffs' claims for reimbursement for hours related exclusively to responding to Intervenors is not recoverable, and those hours should be removed from the top line of LandWatch's recovery. In addition to this time spent exclusively on matters related to Intervenors, LandWatch also combined its response to Federal Defendants' and Intervenors' separate cross motions for summary judgment. Therefore, some of the time billed

as responding to Federal Defendants' cross motion necessarily included non-compensable time responding to Intervenors' motion.  The Court should use its discretion to apply an additional percentage deduction from LandWatch's bottom line recoverable fees.

In sum, Federal Defendants have identified dozens of hours of unreasonable and excessive time billed by LandWatch that is distinct from the non-compensable time discussed above in section IV.A.  For all of the above-stated reasons, the Court should exercise its discretion and deduct ten percent from the lodestar identified below to account for the unreasonable and excessive time LandWatch spent on this litigation.

### C.    LandWatch Seeks Compensation at Excessive Hourly Rates.

Federal Defendants also object to the exorbitant hourly rates claimed by LandWatch under EAJA and the ESA.  EAJA's adjusted statutory maximum hourly rate for 2016 through 2019 was $192.68, $196.79, $201.60, and $204.25, respectively.  *See* Pettigrew Decl. ¶ 16.  For claims brought under the ESA, a plaintiff may recover "reasonable" attorneys' fees.  16 U.S.C. § 1540(g)(4).  Whether an enhanced rate under EAJA or a reasonable rate under the ESA, courts in Oregon "rely on the most recent Oregon State Bar (OSB) Economic Survey as the initial benchmark" for determining a reasonable hourly rate.  *Turner*, 305 F. Supp. 3d at 1165; *see also McKenzie Flyfishers*, 158 F. Supp. 3d at 1090.  A party seeking a rate in excess of the OSB Survey's average rate bears the burden of justifying that higher rate.  *Prison Legal News v. Umatilla County*, No. 2:12-cv-01101-SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) (citation omitted).  And in only the rarest of circumstances is an award above the seventy-fifth percentile appropriate.  *Id.* (citations omitted).

LandWatch seeks compensation for 1,028.2 hours for *ten* different attorneys, all at rates in excess of EAJA's statutory maximum and reasonable rates in Oregon.  *See* ECF Nos. 138-1 (identifying rates for ten attorneys ranging from $205/hour to $540/hour).  This is unreasonable.

Hundreds of hours billed by LandWatch cannot be attributed to the ESA and, under EAJA, are for work by counsel without distinctive knowledge and skills developed through a practice specialty, or for work that did not require any such skills in this case.  And even in those instances where a "special factor" may exist to justify a rate higher than EAJA's statutory rate, or where hours can be attributed to the ESA claims, LandWatch seeks excessive rates.

> **1.    Many of the hours billed by LandWatch are subject to EAJA's adjusted statutory maximum rate.**

The timesheets submitted by LandWatch show that only Mr. Stiefel and Mr. Winter have colorable claims that their work on the merits involved the ESA claim.  The remaining fees claimed by all of the other attorneys are recoverable, if at all, under EAJA's statutory maximum.

> **a.    Attorney Bruden does not qualify for enhanced rates.**

"Although environmental litigation may constitute an identifiable practice specialty, Plaintiffs must first establish that their counsel had such a specialty."  *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1159-60 (9th Cir. 2008).  Ms. Bruden graduated from law school in 2016, and LandWatch does not identify when she became a member of the bar.  Stiefel Decl. ¶ 24, ECF No. 138.  LandWatch now claims that she is entitled to enhanced rates due to a practice specialty for work done the same year she graduated from law school and the following year.  If that were the case, any attorney involved in environmental litigation would qualify for enhanced rates, regardless of the lawyer's practice experience.  LandWatch's attempt to anoint as an expert practitioner every lawyer involved in an environmental law case runs counter to the Supreme Court's admonition that compensation in excess of the statutory maximum is supposed to be "rare" and "exceptional."  *Turner*, 305 F. Supp. 3d at 1167 (finding attorney with "some post-law school experience in several environmental law cases" does not qualify for rates higher than the statutory maximum because such rates "are supposed to be 'rare' and 'exceptional'"

(quotation omitted)).  Enhanced rates potentially apply only for "distinctive knowledge and skills developed through a *practice* specialty."  *Love*, 924 F.2d at 1496 (emphasis added).

The case law is consistent that lawyers with Ms. Bruden's level of experience are not entitled to enhanced rates.  *See Cascadia Wildlands*, 987 F. Supp. 2d at 1097-98 (finding no practice specialty that would warrant enhanced rates for new attorneys despite clinical and research experience from law school); *McKenzie Flyfishers*, 158 F. Supp. 3d at 1094-95 (refusing to apply enhanced rates "[b]ecause [counsel] had less than one year of professional experience at the outset of this case").  *Turner*, 305 F. Supp. 3d at 1166-67 (finding attorney with "some post-law school experience in several environmental law cases" not entitled to enhanced rates); *Savage*, 2019 WL 3293425, at *6 (finding attorney in first year of law practice following a clerkship not entitled to enhanced rates).

LandWatch points to no contrary authority and does not specifically argue that Ms. Bruden's limited experience qualifies her as having distinctive knowledge and skills developed through a practice specialty.  *See* ECF No. 137 at 8 (generically referring to "LandWatch's attorneys" and string citations to declarations).  LandWatch's failure to concede this point highlights the general unreasonableness of its approach to fees and its pursuit of a windfall, as it seeks not only to shift to the taxpayer the expense of training a new lawyer, it seeks that taxpayer subsidy at enhanced rates.[6]  As discussed above, much of the time billed by Ms. Bruden is not compensable.  And, at most, EAJA's statutory rate should apply to the remaining hours of Ms. Bruden's time.[7]  *See* Pettigrew Decl. ¶ 17.

---

[6] Moreover, seeking enhanced rates for Ms. Bruden further undermines any credibility of their declarants, all of whom opine that such limited experience somehow qualified Ms. Bruden for enhanced rates.  *See* Lacy Decl. ¶¶ 51, 55; Parent Decl. ¶¶ 10, 11; Buchele Decl. ¶¶ 9, 14.

[7] Though LandWatch's timesheets show Ms. Bruden did some limited ESA work, her efforts were confined to researching the pre-litigation Notice of Intent to sue and not the merits of the

### b. Attorney Becker does not qualify for enhanced rates for his work in this case.

LandWatch seeks payment for of nearly $40,000 for 79.5 hours of work by Mr. Becker at rates that far exceed EAJA's statutory maximum, despite the fact that Mr. Becker played no substantive role in litigating the merits of this case (i.e. the parts of the case that may have involved Mr. Becker's expertise). *See* ECF No. 139-1 (seeking $465/hour for 2018 and $475/hour for 2019). Mr. Becker did not file a notice of appearance in the district court until after briefing was completed on the parties' cross-motions for summary judgment, the F&R was issued, and objections to the F&R filed. *See* 2:17-cv-1091, ECF No. 100. Mr. Becker's work on the case was limited to advisory roles during the placeholder notice of appeal period and during this fees litigation. As discussed above, this Court should deny reimbursement to LandWatch for all of its time litigating fees and should steeply discount Mr. Becker's remaining time. If the Court awards LandWatch fees related to Mr. Becker, his hourly rates should be reduced.

Federal Defendants acknowledge that, had Mr. Becker participated in litigating the merits of this case, his knowledge and experience gained from a practice specialty would typically qualify him for enhanced rates under the Ninth Circuit's approach to EAJA. But an award at enhanced rates requires that the knowledge and skills gained from a practice specialty must have been necessary to the litigation. *Love*, 924 F.2d at 1496. Here, neither the placeholder appeals nor the fees litigation required Mr. Becker's specialized knowledge or experience. As such, Mr. Becker does not qualify for enhanced rates for any of the work he did on this case.

*Forestkeeper* is instructive. In that case, a plaintiff sought attorneys' fees for seven attorneys, four of whom sought rates exceeding EAJA's statutory cap. 2011 WL 2946176, at *5.

---

ESA claim. As such, she cannot show that she should be awarded fees under the ESA. But even if Ms. Bruden could recover a reasonable rate under the ESA, EAJA's adjusted statutory cap also reflects such a rate for someone with her lack of experience. *See infra* § 4.C.2.a.

*Fed. Defs.' Resp. to Pl.'s Mot. for Fees*                                    19

The court awarded rates in excess of the statutory cap to *one* of the four attorneys. *Id.* In denying the enhanced rates to the remaining three attorneys, the court noted that "each has specialized skill in environmental law," but the plaintiff had "not established that their specialized skills were necessary." *Id.* at *6. In short, the court found the plaintiff had "failed to establish why seven attorneys, including four environmental specialists, were needed to litigate [the case]." *Id.* The same can be said here. LandWatch already seeks enhanced rates for the attorneys who litigated the merits of the case. LandWatch has failed to establish why Mr. Becker's specialized skills were necessary here, where his appearance and billing of eighty hours occurred after all of the proceedings in the district court involving any sort of expertise had ended. At most, LandWatch should be compensated for the 13.5 hours of non-fees related work by Mr. Becker at EAJA's statutory rate.[8] *See* Pettigrew Decl. ¶ 17.

### c.    Attorneys Bloemers, Johnson, and Fahey do not qualify for enhanced rates for their work on this case

As discussed above, LandWatch seeks compensation at enhanced rates for 3.0 hours for Mr. Bloemers, 2.6 hours for Ms. Johnson and 10.7 hours for Ms. Fahey, none of whose work was necessary. To the extent that the Court allows recovery for any of this work, it should not be at enhanced rates. Similar to Mr. Becker, Federal Defendants do not argue that these counsel would not be entitled to enhanced rates if they relied on any knowledge and skill gained through a practice specialty that were necessary to this litigation. But the limited work performed by Mr. Bloemers, Ms. Johnson, and Ms. Fahey make clear that any such knowledge and skill were not necessary to this litigation. Their participation in this case is analogous to the cumulative environmental specialists for whom the court in *Forestkeeper* denied enhanced rates. Because

---

[8] None of the time billed by Mr. Becker related to LandWatch's ESA claim and, even if it had, the EAJA rate would be reasonable under the ESA for the kind of work Mr. Becker did here.

LandWatch has not met its burden of showing that any specialized knowledge and experience of

Mr. Bloemers, Ms. Johnson, and Ms. Fahey were necessary to this litigation, LandWatch is not

entitled to enhanced rates for any of their time spent on this case.[9]  Compensation for any work

by these attorneys should be at EAJA's statutory rate.  *See* Pettigrew Decl. ¶ 17.

> **d.    Any compensation for fees-related work should be limited to EAJA's statutory maximum rate.**

As discussed above, LandWatch seeks $60,926.70 in compensation for 139.8 hours of

work at hourly rates ranging from $325 to $540 that are directly attributable to litigating the fee

petition.  *See* Pettigrew Decl. ¶ 9.  None of those fees should be awarded, including fees for work

performed by the "expert fee declarants."  But to the extent the Court decides to award additional

fees to LandWatch for litigation over its fee petition, the hourly rates must be reduced to EAJA's

statutory maximum, at most.  As other courts in the Ninth Circuit have held, "[p]reparation of an

application for attorney fees does not require specialized or distinctive knowledge within the

meaning of EAJA."  *Lucas v. White*, 63 F. Supp. 2d 1046, 1063 (N.D. Cal. 1999); *see also*

*Savage*, 2019 WL 3293425, at *6 (awarding EAJA statutory rate for time spent preparing fee

petition); *Native Ecosys. Council v. Weldon*, 921 F. Supp. 2d 1069, 1081 (D. Mont. 2013)

(same).

> **2.    The hourly rates for attorneys Stiefel and Winter are excessive.**

Although Mr. Stiefel only had three years of experience at the outset of this case, Federal

Defendants, for purposes of this case, do not take the position that he does not have knowledge

and skill gained through a practice specialty.  Similarly, although Mr. Winter performed a very

limited role in this matter, Federal Defendants do not maintain that any of his knowledge and

---

[9] As with Mr. Becker, none of the time billed by these attorneys is explicitly related to
LandWatch's ESA claim and, even if it were, the EAJA statutory rate would be reasonable under
the ESA for the kind of work these attorneys did here.

skills gained through a practice specialty were not necessary to this litigation.  But LandWatch still seeks compensation at unreasonable hourly rates for the work done by Mr. Stiefel and Mr. Winter.  For the reasons discussed below, the average rate from the OSB Survey for Eastern Oregon should apply to the work done by these counsel.  Moreover, even if Portland rates apply, those rates should be capped at the average rate from the OSB Survey.

> ### a.   Eastern Oregon is the relevant forum for determining reasonable hourly rates.

"The general rule is that the relevant community for purposes of the prevailing rate is the forum in which the district court sits."  *Marquez v. Harper Sch. Dist. No. 66*, No. 2:09-cv-01254-SU, 2012 WL 2469545, at \*3 (D. Or. June 26, 2012) (citing *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991)).  This case was filed in the Pendleton Division of the District of Oregon, and the hearing on the parties' cross motions for summary judgement was held in Pendleton.  As such, the relevant forum for determining reasonable hourly rates is eastern Oregon.  *See Forestkeeper*, 2011 WL 2946176, at \*5 (finding relevant community to be Fresno, California because case filed in Fresno division of the Eastern District of California).

LandWatch submitted no declaration or other evidence detailing its efforts to obtain counsel in eastern Oregon.  Instead, LandWatch simply provided declarations from other Portland-based counsel opining that no attorneys in eastern Oregon are capable or available to handle this type of litigation.  Lacy Decl. ¶¶ 29-30 (claiming no attorneys available in all of eastern Oregon to handle this type of litigation); Buchele Decl. ¶ 12 (speculating no attorney could handle the case in eastern Oregon).  As noted above, these declarants' opinions are not objective; the declarants have a personal interest in the Court finding that no attorneys in eastern Oregon are capable of handling this type of litigation, as they will presumably cite to such a finding the next time they submit their own fees application in one of the many environmental

cases filed in eastern Oregon.  Thus, the declarants' speculation about the proficiency of the

eastern Oregon bar is not reliable evidence that eastern Oregon lacks similarly qualified counsel.

Indeed, other similar lawsuits involving challenges under the Administrative Procedure Act,

NEPA, and NFMA have been brought and litigated by counsel based out of eastern Oregon.  *See,*

*e.g.*, Case Nos. 2:17-cv-843; 3:12-cv-2271; 2:09-cv-1500; 3:02-cv-291; 3:00-cv-439.

 The best evidence of an absence of capable counsel in eastern Oregon would have been a

showing the LandWatch unsuccessfully tried to locate such counsel.  But LandWatch did not

even attempt to retain counsel in eastern Oregon, instead concluding that none existed who could

have handled the case.  *See* Dewey Decl. ¶ 8.  In light of the fact that all relevant proceedings in

this case were held in Pendleton, LandWatch's failure to submit any evidence showing it

attempted to identify and obtain counsel in the local forum, and the evidence showing counsel

from eastern Oregon who are fully capable of handling this type of litigation, the relevant forum

for determining hourly rates is Pendleton.[10]  *See Schwarz v. Sec'y of Health & Human Servs.*, 73

F.3d 895, 907 (9th Cir. 1995) (affirming district court's application of forum rates); *cf. Gates*,

987 F.2d at 1405 (a court does not abuse its discretion in awarding non-forum rates only if the

plaintiffs show "local counsel was unavailable, either because they are unwilling or unable to

perform because they lack the degree of experience, expertise, or specialization required to

handle properly the case.").  And the average rate for the most experienced attorneys in eastern

---

[10] *Turner* is not to the contrary.  In that case, the court applied Portland rates "because the case was argued in Portland and because attorneys were not available in Eastern Oregon."  305 F. Supp. 3d at 1169 (citation omitted).  Additionally, the plaintiff in that case submitted a declaration about her efforts to locate counsel.  *Id.* (citing Coulter Decl.).  In contrast, here, the case was argued in Pendleton and LandWatch submitted no evidence showing that it attempted to retain counsel in eastern Oregon.  Similarly, in *Prison Legal News*, the prevailing party submitted evidence that it was "unable to secure adequate counsel in Eastern Oregon."  2013 WL 2156471, at *5.  LandWatch submitted no evidence of any attempts to obtain counsel in the relevant forum in this case.

Oregon is $250/hour.  *See* Pettigrew Decl. ¶ 16.  The OSB Survey does not provide hourly rates for attorneys in eastern Oregon with Mr. Stiefel's three to five years of experience, but shows that attorneys with more experience (seven to nine years) have an average rate of $225/hour.  To account for Mr. Stiefel's relative lack of experience, his hourly rate should be capped at $205 and Mr. Winter's should be capped at $250.[11]

> **b.    Even if Portland rates applied, LandWatch has not shown rates above the OSB Survey's average are warranted.**

Here, Mr. Stiefel seeks compensation in excess of the Portland average rate for work done in 2016 and in excess of the seventy-fifth percentile for work done in 2017 through 2019.  Similarly, Mr. Winter seeks compensation at an hourly rate in excess of the seventy-fifth percentile for his work on this case.  But there is nothing about this case or about Mr. Stiefel's or Mr. Winter's work on this case that would warrant an hourly rate in excess of the average Portland rate, much less in excess of the seventy-fifth percentile.  *See Prison Legal News*, 2013 WL 2156471, at *5-6 (declining to apply rates beyond the OSB Survey's average).  Indeed, Mr. Stiefel was only three years removed from law school when this case began, and Mr. Winter's work on this case largely consisted of reviewing various draft documents.  This does not justify compensation at the seventy-fifth percentile (or beyond) of the OSB Survey.  Because LandWatch cannot meet its burden of showing that above-average rates are warranted, the hourly rates for Mr. Stiefel and Mr. Winter should be reduced to, at most, the Portland average rates.[12]

---

[11] A reasonable rate for Ms. Bruden would be below the $205 hourly rate applicable to Mr. Stiefel.  As such, as noted above, the adjusted EAJA statutory rate should apply.

[12] Paragraph 16 of the Pettigrew declaration includes a table with the hourly rates requested as compared to the OSB Survey rates by all counsel.  LandWatch seeks hourly rates for all counsel other than Ms. Bruden in excess of the OSB Survey's seventy-fifth percentile.  To the extent the Court awards rates above EAJA's statutory maximum for any of the remaining counsel and determines that Portland rates apply, those rates should be, at most, the Portland average.

**D.      LandWatch Seeks Compensation for Costs that Are Not Compensable.**

LandWatch also seeks costs in the amount of $10,105.93.  ECF No. 138-5.  Nearly all of these costs are improper.  In particular, LandWatch seeks $8,375 in compensation for work done by a hydrologist that it hired during the administrative process, years before this litigation began. This hydrologist submitted an invoice to LandWatch in 2014 for $2,375 and another in 2016 for $5,700.  In addition, LandWatch seeks $497.20 in travel costs incurred by Mr. Stiefel during the administrative process in 2016.  As with LandWatch's request for fees billed during the administrative process, these costs incurred during the administrative process are not compensable under EAJA and further show that their motion for fees and costs is unreasonable. *See W. Watersheds Proj.*, 677 F.3d at 923, 925-29.  Moreover, the hydrologist submitted an invoice for an additional $300 for reviewing the ROD in July 2017.  But LandWatch has not shown that such a review was necessary to the litigation, and those costs should not be awarded.[13]  As a result, only $1,233.73 of the costs sought by LandWatch are reimbursable.

**V.      CONCLUSION**

Deducting the hours LandWatch seeks for non-compensable work and applying a reasonable hourly rate to the remaining time results in a lodestar of $139,249.02.  Pettigrew Decl. ¶ 17.  A further ten percent deduction with the addition of $1,233.73 in costs results in a total of $126,557.85.  This is all the attorneys' fees and costs to which LandWatch is entitled under EAJA and the ESA.

---

[13] LandWatch's declarations maintain that the costs for the hydrologist were necessary to prepare the case but they do not address the fact that the hydrologist was retained years before the final ROD was issued and litigation began.  Allowing for these costs would improperly erase any distinction between costs incurred during the administrative process and those incurred as necessary for litigation.

Respectfully submitted, December 20, 2019,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice


_/s/ Shaun M. Pettigrew_____
TAYLOR FERRELL
SHAUN M. PETTIGREW
Natural Resources Section
BRIENA STRIPPOLI
Wildlife and Marine Resources Section
150 M Street, NE
Washington, D.C. 20004
Phone: (202) 305-0874 (Ferrell)
         (206) 526-6881 (Pettigrew)
         (202) 305-0339 (Strippoli)
taylor.ferrell@usdoj.gov
shaun.pettigrew@usdoj.gov
briena.strippoli@usdoj.gov

*Counsel for Federal Defendants*